David F. **ERTMAN** and Jane Ertman, Plaintiffs–Appellants,

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

Docket No. 97–6237.

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1998.

Decided Jan. 27, 1999.

Brian P. Daniels, Brenner, Saltzman & Wallman LLP, New Haven, Conn., for Plaintiffs–Appellants David F. Ertman and Jane Ertman.

Annette M. Wietecha, Tax Division, Department of Justice, Washington, D.C. (Loretta C. Argrett, Assistant Attorney General, and Gilbert S. Rothenberg, Tax Division, Department of Justice, and John H. Durham, United States Attorney, District of Connecticut, on the brief), for Defendant–Appellee United States of America.

Before: FEINBERG, CALABRESI, and SOTOMAYOR, Circuit Judges.

CALABRESI, Circuit Judge:

Plaintiffs–Appellants David and Jane Ertman appeal from a decision of the United States District Court for the District of Connecticut (Peter C. Dorsey, *Chief Judge*) granting summary judgment to the Defendant–Appellee United States of America and denying the Ertmans' motion for summary judgment. *See Ertman v. United States,* 972 F.Supp. 706 (D.Conn.1997). The district court held that the Ertmans' suit, which sought a refund of income taxes allegedly overpaid in 1988 and 1989, was time-barred because the Ertmans did not ask for a refund until 1994. *See id.* at 709. In so doing, the court rejected the Ertmans' contention that the limitations period for refund claims set forth at 26 U.S.C. § 6511(b)(2)(A) did not preclude their action because the remittances from which they requested a refund were deposits rather than payments. *See id.* at 708. We affirm.

## I. BACKGROUND

On April 15, 1988, the Ertmans, who are husband and wife, filed with the federal Internal Revenue Service ("IRS") a Form 4868 (Application for Automatic Extension of Time to File U.S. Individual Income Tax Return) requesting an extension of time to file their 1987 income tax return. With their Form 4868 the Ertmans included a check for $11,000. The IRS granted them a four-month extension and then, upon the Ertmans' request, an additional two-month extension, thereby delaying the filing deadline to October 1988. On April 15, 1989, the Ertmans sent another Form 4868, this time accompanied by a check for $49,000, asking for an extension with respect to their 1988 tax return. Just as it had in 1988, the IRS granted them a four-month extension and then another two-month extension, postponing the deadline until October 1989.

The Ertmans did not finally file their tax returns for 1987 and 1988 until April 1994. In their returns, they claimed combined overpayments between the two years of $53,655. The returns indicated that the Ertmans wanted the overpayments applied to other tax liabilities. In March 1995, the IRS notified the Ertmans that it had denied their request for a refund of their overpaid 1987 and 1988 taxes because the couple had filed their refund claims more than three years after the dates that their returns were due.

The Ertmans subsequently filed this action in the District of Connecticut seeking a refund of their overpaid taxes. Their complaint contended that their refund claim was not time-barred because the checks that they had sent to the IRS in 1988 and 1989 were merely deposits and not payments. Accord-

ing to the complaint, the remittances did not become tax payments until April 1994, when the Ertmans filed their tax returns for the relevant years. The Ertmans and the government filed cross-motions for summary judgment. On August 1, 1997, the district court granted summary judgment to the government. *See id.* at 709.

## DISCUSSION

We review *de novo* a district court's decision to grant summary judgment. *See Ayers v. Ryan,* 152 F.3d 77, 80 (2d Cir.1998). "Summary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996) (per curiam).

The Internal Revenue Code sets forth two jurisdictional time bars for tax refund claims. Section 6511(a) provides that a refund claim must be submitted "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C.A. § 6511(a) (1989 & Supp.1998). Even if a refund claim satisfies this requirement, however, § 6511(b)(2)(A) contains a so-called "look-back" provision that limits the taxpayer's recovery to "the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." *Id.* § 6511(b)(2)(A). The application of the look-back provision to the Ertmans' refund claim constitutes the crux of this appeal.

The government asserts that the district court correctly found that § 6511(b)(2)(A) precludes the Ertmans from recovering money remitted in 1988 and 1989, because the Ertmans did not claim a refund from those remittances until they filed their 1987 and 1988 tax returns in 1994—more than three years after the date that their returns were due. The Ertmans counter that the checks submitted with their Forms 4868 were merely deposits at the time they were made in 1988 and 1989 and did not become payments until 1994, when the Ertmans defined their tax liabilities by filing their returns.

The distinction between tax deposits and payments on which the Ertmans rely originated with *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), in which the Supreme Court held that a claim for a refund from a remittance made as a "deposit" rather than as a "payment" was not time-barred by the predecessor to § 6511. *See id.* at 663, 65 S.Ct. 536. Based on its evaluation of the circumstances in the case before it—specifically, (1) the timing of the remittance and the disputed IRS assessment (which came years later), (2) the plaintiffs' intent in making the remittance, and (3) how the IRS treated the remittance upon receipt—the Court concluded that the remittance at issue in that case was a deposit. *See id.* at 661–663, 65 S.Ct. 536.

Two circuits, the Fifth and the Eighth, have interpreted *Rosenman* to establish a "per se" test that treats a remittance as a payment for purposes of the statute of limitations on refund claims only when the actual tax that is due has been determined. *See United States v. Dubuque Packing Co.,* 233 F.2d 453, 460 (8th Cir.1956) (holding that a remittance is not a payment until the filing of the tax return, or an assessment by the IRS, defines the taxpayer's liability); *Thomas v. Mercantile Nat'l Bank,* 204 F.2d 943, 944 (5th Cir.1953) (same). At least five other circuits, however, have rejected the "per se" test. *See New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1556–57 (Fed.Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *Moran v. United States,* 63 F.3d 663, 667–68 (7th Cir. 1995); *Ewing v. United States,* 914 F.2d 499, 503 (4th Cir.1990); *Ameel v. United States,* 426 F.2d 1270, 1273 (6th Cir.1970); *Fortugno v. Commissioner,* 353 F.2d 429, 435–36 (3d Cir.1965). Furthermore, subsequent decisions of both the Fifth and the Eighth Circuits have called the test into question. *See Ford v. United States,* 618 F.2d 357, 359–61 (5th Cir.1980) (criticizing the "per se" test but applying it because the panel of the court was without power to overrule or disregard the holding of *Mercantile National Bank* ); *Essex v. Vinal,* 499 F.2d 226, 229–30 (8th Cir.1974) (ignoring *Dubuque Packing Co.* and holding that the plaintiff's remittance,

conveyed to the IRS along with an application for an extension of the deadline for filing a return, was a payment because the plaintiff intended it as a payment of taxes and the IRS treated it as a payment).

Having rejected the "per se" test, various circuits have construed *Rosenman* as suggesting that courts look to the facts and circumstances of an individual case to determine whether a remittance is a deposit or a payment. *See New York Life Ins. Co.*, 118 F.3d at 1557; *Moran*, 63 F.3d at 667–68; *Ewing*, 914 F.2d at 503; *Ameel*, 426 F.2d at 1272–73; *Fortugno*, 353 F.2d at 435–36. Following language in *Rosenman*, these courts classify a remittance as a payment or a deposit based on three factors: (1) the timing of the assessment or definition of the tax liability; (2) the taxpayer's intent with respect to the remittance; and (3) the IRS's treatment of the remittance upon receiving it. *See, e.g., Moran*, 63 F.3d at 668; *Ewing*, 914 F.2d at 503.

At first blush, it would appear that the "facts and circumstances" test would generally require a trial to make the fact-specific inquiry that the test entails. And yet a significant number of courts (including courts in jurisdictions that have expressly adopted the "facts and circumstances" test, *see, e.g., Gabelman v. Commissioner*, 86 F.3d 609, 612 (6th Cir.1996)) have held that certain types of remittances can categorically be deemed payments. *See, e.g., United States v. Miller*, 315 F.2d 354, 358–59 (10th Cir.1963) (holding that a remittance of estimated income tax becomes a payment on the date that the declaration of estimated income tax was filed); *Hill v. United States*, 263 F.2d 885, 887 (3d Cir.1959) (holding that a remittance made in conjunction with the submission of a tax return is ordinarily a payment rather than a deposit).

■ We believe that in cases in which, unlike *Rosenman*, the Internal Revenue Code explicitly defines a particular type of remittance as a payment, a factual inquiry is unnecessary to determine whether a remittance is a payment or a deposit,[1] for in such cases the statutory delineation dominates over the circumstances of the particular remittance at issue. Section 6513(b)(2) of the Internal Revenue Code contains just such a definition. It provides that "[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return ... for such taxable year (determined without regard to any extension of time for filing such return)." Thus, in this circuit, any remittance to which § 6513(b) applies is a payment as a matter of law. *See Chemical Bank N.Y. Trust Co. v. United States*, 386 F.2d 995 (2d Cir.1967) (per curiam) (adopting the district court's opinion, reported at 275 F.Supp. 26 (S.D.N.Y.1967), holding that the plain language of § 6513(b) renders a remittance of an estimated income tax a payment rather than a deposit).

■ Section 6513(b)(2) would seem to apply to Form 4868 remittances, making them payments as a matter of law. Form 4868 remittances are, after all, the taxpayer's estimate of his or her tax liability for the preceding year. And the IRS regulations (requiring remittances to be submitted with Form 4868 applications) effective during the period relevant to this case described such remittances as "the full ... amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return." 26 C.F.R. § 1.6081–4(a)(4) (1994), *amended by* 61 Fed.Reg. 260 (1996), *and* 61 Fed.Reg. 69,027 (1996).[2] Furthermore, these regulations specified that filing a Form 4868 application and accompanying remittance "shall not operate to extend the time for payment of any tax due on such return." *Id.* § 1.6081–4(b).

Nevertheless, the Ertmans argue that § 6513(b)(2) does not apply to Form 4868 remittances. They contend that § 6513(b)(2)'s use of the term "estimated in-

---

1. Because the analysis that the Supreme Court applied in *Rosenman* suggests an inquiry akin to the "facts and circumstances" test, however, we deem ourselves bound to refrain from categorically defining a type of remittance as a payment or as a deposit unless the factual or legal context of the remittance distinguishes it from the situation in *Rosenman*.

2. The 1996 amendments to § 1.6081–4 do not affect the issue presented in this appeal.

come tax" refers only to quarterly estimated income tax payments made pursuant to 26 U.S.C. § 6654 and not to Form 4868 remittances. They point out that § 6513 and § 6654 were enacted as consecutive provisions in the Current Tax Payment Act of 1943, and that § 6513(b) is titled "Prepaid income tax"—a term that they believe does not apply to a remittance submitted with a Form 4868. The Ertmans interpret "prepaid" as referring to payments made before the tax comes due and note that Form 4868 remittances may be made until the actual day that taxes are due.

There are several problems with construing § 6513(b) in this way. First, the coincident enactment of § 6513 and § 6654 is not by itself indicative that Congress meant § 6513(b)(2) to apply only to quarterly estimated tax payments. Second, the language of § 6513(b)(2) expansively and without qualification refers to "[a]ny amount paid as estimated income tax." Third, taking the Ertmans' interpretation at face value, any Form 4868 remittance made before April 15, the date taxes are due, could be "Prepaid income tax"; and only Form 4868 remittances made on April 15 would fall outside the ambit of § 6513. Thus, § 6513 would apply to a Form 4868 remittance made on April 14, causing it to become a payment on April 15, while a Form 4868 remittance made on April 15 would not become a payment until the taxpayer filed the corresponding tax return, perhaps (as in the case of the Ertmans) years later. This would result in essentially identical remittances being treated differently. Fourth, reading Form 4868 remittances out of § 6513 would treat other similar remittances inconsistently.[3]

There is, fortunately, no reason why we need to read § 6513(b) in the way that the Ertmans suggest. There exists a different and quite obvious reading of the statutory language that is both "plain" and avoids the paradoxes of the Ertmans' reading. Under this unproblematic interpretation, the title of § 6513(b), "Prepaid income tax," simply refers to any payments made before the taxpayer submits the tax return that determines his or her actual tax liability. As a result, a Form 4868 remittance becomes a payment on the date that the taxpayer's tax comes due.

Applying § 6513(b) to Form 4868 remittances and consequently holding that such remittances are not deposits poses no unfairness to taxpayers—even those who obtain extensions for filing their returns. Because the look-back period of § 6511(b)(2)(A) expires three years after the taxpayers' deadlines for filing their returns, including filing extensions granted by the IRS, § 6511 will not bar claims by taxpayers who submit refund claims within three years of filing their returns—as long as they file their returns by the date they are due.[4] Instead, it is the Ertmans' interpretation that would lead to inequities. Not only would it treat Form 4868 remittances quite differently from other similar tax remittances such as withholdings and quarterly estimated tax payments, it would also indefinitely delay the statute of limitations for taxpayers who are delinquent in filing their returns, thereby unfairly advantaging them over taxpayers who file their returns in a timely manner.

For all these reasons, we join the Sixth, Ninth, and Tenth Circuits in holding that, as a matter of law, a Form 4868 remittance is a payment and not a deposit. *See Ott v. United States*, 141 F.3d 1306, 1309–10 (9th Cir. 1998); *Gabelman*, 86 F.3d at 612–13; *Weigand v. United States*, 760 F.2d 1072, 1074 (10th Cir.1985).

While our holding by implication rejects the "per se" test that has been adopted in the Fifth and Eighth Circuits,[5] it is fully

---

**3.** Provisions of § 6513 deem "advance payment of tax" and "tax actually deducted and withheld" to be paid on the deadline for filing returns (without regard to extensions granted from that deadline). *See* 26 U.S.C. § 6513(a) (advance payments); *id.* § 6513(b)(1) (tax deducted or withheld).

**4.** Since the issue is not before us, we take no position as to whether Form 4868 remittances should be treated as payments if § 6511 did not take into account extensions for filing returns.

**5.** We decline to adopt the "per se" test both because we believe that our holding reflects a better reading of the applicable statutory provisions and because the test is inconsistent with Second Circuit precedent. *See Lewyt Corp. v. Commissioner*, 215 F.2d 518, 522–23 (2d Cir. 1954) (explicitly rejecting an interpretation of

consistent with a "facts and circumstances" test. *Cf. Gabelman,* 86 F.3d at 612 (noting that the Sixth Circuit's adoption of the "facts and circumstances" test in *Ameel,* 426 F.2d 1270, did not preclude it from concluding that Form 4868 remittances were payments as a matter of law). And there may well be instances in which it is appropriate for courts to interpret a remittance as a deposit. This may be so, for example, "[i]n situations where the IRS is challenging determinations and representations made by taxpayers[ and] a taxpayer . . . submit[s] a remittance merely to stop any penalties from accumulating." *Gabelman,* 86 F.3d at 613. But that is not the case before us,[6] and we accordingly take no position on whether and when a "facts and circumstances" test should apply.

### III.  CONCLUSION

We hold that Form 4868 remittances are, as a matter of law, payments and not deposits for the purpose of determining whether a taxpayer's refund claim is barred by 26 U.S.C. § 6511(b)(2)(A). Accordingly, the district court properly concluded that § 6511(b)(2)(A) precluded the Ertmans from recovering a refund from their Form 4868 remittances. The decision of the district court is therefore AFFIRMED.

*Rosenman* as establishing a per se rule), *aff'd in part and rev'd in part on other grounds,* 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955).

---

**6.** Form 4868 remittances are the taxpayer's own estimate of his or her tax liability and therefore are not paid in a situation where the taxpayer is challenging a liability claimed by the IRS. *See Gabelman,* 86 F.3d at 613.