**Michael NOGA, Plaintiff,**

v.

**CITY OF SCHENECTADY POLICE OFFICERS William Potenza and John Lewis and Paul S. Cirincione,**[1] **Defendants.**

**No. 99CV0941LEK/DRH.**

United States District Court, N.D. New York.

Oct. 9, 2001.

---

1. Although the caption of the amended complaint appears to identify all three defendants as City of Schenectady police officers, it is clear from the allegations of the amended complaint that only defendants Potenza and Lewis were so employed. Am. Compl. (Docket No. 13), ¶¶ 10–13.

84

Dreyer Boyajian LLP, Albany, NY (Daniel J. Stewart, of counsel) for Plaintiff Michael Noga.

Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C., Albany, NY (Michael J. Murphy, Joseph Amicone, of counsel), for Defendant William Potenza.

Gleason, Dunn, Walsh & O'Shea, Albany, NY, (Michael P. Ravalli, of counsel), for Defendant John Lewis.

Roche, Corrigan, McCoy & Bush, Albany, NY (Joseph M. McCoy, of counsel), for Defendant Paul S. Cirincione.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Plaintiff Michael Noga ("Noga") brought this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two City of Schenectady police officers and a private citizen, violated his constitutional rights under the Fourth Amendment by unlawfully arresting and maliciously prosecuting him. Am. Compl. (Docket No. 13). Noga also alleges pendent state claims. *Id.* Presently pending is a motion by defendant John Lewis ("Lewis") for summary judgment pursuant to Fed.R.Civ.P. 56(b). Docket No. 23. Noga opposes the motion. Docket No. 28. For the reasons which follow, the motion for summary judgment is denied in part and granted in part.

### I. Background

The following facts are presented in the light most favorable to Noga as the non-movant on this motion for summary judgment. *See Ertman v. United States,* 165 F.3d 204, 206 (2d Cir.1999).

In February 1995, defendant Paul S. Cirincione ("Cirincione") entered into an agreement to rent a garage from Noga. App. To Ravalli Aff. (Docket No. 26) (hereinafter "App.") at 208. Paragraph 3(d) of the rental agreement allowed the landlord

to secure the premises and remove property from the garage as collateral when the rent was late. *Id.* Cirincione's friend, Lewis, a City of Schenectady police officer, used the garage to store his race car. App. At 282–83. In early 1998, Cirincione was several months late with his rent and late fees had accumulated. *Id.* at 261, 280–84. Noga was unable to collect rent from Cirincione and when he tried to collect rent from Lewis, Lewis told Noga that nothing could be done because Lewis was a police officer and Noga better "watch out." *Id.* at 111, 119, 139–40, 282.

In accordance with their rental agreement, Noga removed a welder and a generator from the garage and placed both in storage pending payment by Cirincione. App. at 284–85. Cirincione told Lewis about these events and sought Lewis' advice. *Id.* at 165, 200, 371 While on duty, Lewis sought the opinions of fellow officers William Potenza ("Potenza"), a defendant herein, and Robert P. McHugh ("McHugh") but failed to inform either detective about the rental agreement's self-help provision. *Id.* at 250, 349, 389. McHugh told Lewis that Cirincione's problem was civil in nature and Cirincione would have to go to small claims court. *Id.* at 393. Potenza told Lewis that if Cirincione wanted the situation investigated, he would have to fill out a Standard Incident Report ("SIR"). Potenza Aff. (Docket No. 36) at ¶ 6. While on duty, Lewis told Cirincione that he could file a complaint and then called another uniformed officer to come to Cirincione's place of business formally to file the complaint. App. at 358–59. Cirincione only believed that Noga had no right to enter the garage and take his property because Lewis had told him that the self-help provision was illegal. *Id.* at 197–98. Lewis acted as a middleman between Cirincione and the investigating officers. *Id.* at 358.

On February 9, 1998, Cirincione filed an incident report with the Schenectady Police Department charging Noga with burglary. App. at 71. Potenza was assigned the case and on February 20, 1998, Potenza signed a felony complaint charging Noga with burglary in the third degree. *Id.* at 77. Lewis was aware that Cirincione was behind in his rent and that the lease authorized the seizure of collateral by Noga but never so advised any official. *Id.* at 217–19, 241–46. An arrest warrant was issued and on February 26, 1998, Noga was arrested. *Id.* at 15, 273. Lewis spoke with the Assistant District Attorney who prosecuted the case against Noga, Mark Caruso ("Caruso"), while the case was pending. *Id.* at 353–54.

Shortly afterwards, Lewis learned of Noga's arrest and assumed that Noga was arrested for burglary. App. at 360. On March 6, 1998, the charges against Noga were reduced to criminal trespass in the third degree. *Id.* at 273. Lewis learned of the reduction in charges from either Caruso or Potenza. *Id.* at 360–61. On October 17, 1998, the criminal charges against Noga were dismissed. *Id.* at 273. This action followed.

## II. Discussion

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if "there is no genuine issue as to any material fact[,] . . . the moving party is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Lee v. Sandberg*, 136 F.3d 94, 102 (2d. Cir.1997). Once the moving party has come forward with sufficient evidence in support of the motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and

cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P 56(e); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Grain Traders, Inc. v. Citibank, N.A.,* 160 F.3d 97, 100 (2d Cir.1998); *see also Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). "Furthermore, the non-movant 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.'" *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir. 1996) (citations omitted). However, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Section 1983 [2]

#### 1. Personal Involvement

Defendant Lewis moves for summary judgment for lack of personal involvement in the arrest and prosecution of Noga. Plaintiff Noga alleges that Lewis' personal involvement stems from his failure to intercede to prevent another officer from depriving Noga of his constitutional rights.

"'[P]ersonal involvement of defendants in alleged constitutional depriva-tions is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Personal involvement encompasses a police officer's "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). In order for liability to attach, the police officer must have knowledge or reason to know that a citizen has been unjustifiably arrested or maliciously prosecuted and a "realistic opportunity to intervene to prevent the harm." *Anderson,* 17 F.3d at 557; *Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982). "Whether an officer had sufficient time to intercede ... is an issue of fact for the jury unless ... a reasonable jury could not possibly conclude otherwise." *Anderson,* 17 F.3d at 557.

Viewing the facts in the light most favorable to Noga, there is sufficient evidence to raise questions of material fact regarding whether Lewis was personally involved in Noga's arrest and prosecution. Lewis contends that he was not personally involved because he was not an active participant in the arrest or prosecution of Noga. Docket No. 27 at 7. However, personal involvement also includes a police officer's failure to protect a civilian's constitutional rights. *See Anderson,* 17 F.3d at 557. Lewis' knowledge of the self-help provision, which allowed Noga to remove property in lieu of late rent, invoked Lewis' duty to protect Noga's constitutional rights by informing the proper authorities.

**2.** 42 U.S.C. § 1983 provides, in pertinent part, that:

[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir.1997) (same). Lewis called the officer to Cirincione's place of business in order to file a complaint against Noga. This fact alone could allow a jury to find that Lewis had sufficient time to prevent the violation of Noga's constitutional rights.

Also, Lewis concedes that he knew about Noga's arrest for burglary shortly after it occurred and was aware of the pending prosecution. App. at 360. Yet, Lewis never told the investigating officers or the court about the self-help provision in the lease. *Id.* at 360–61. Potenza stated that he relied on Lewis' statements in his decision to arrest Noga and that if Lewis had informed him of the self-help provision, there would have been no arrest. *Id.* at 235, 260. Therefore, defendant Lewis' motion for summary judgment on the basis of lack of personal involvement in the unlawful arrest and malicious prosecution claims is denied.

### 2. Proximate Cause

Defendant Lewis also moves for summary judgment on the ground that his alleged conduct was not a proximate cause of the deprivation of Noga's constitutional rights. Plaintiff Noga counters that no independent or intervening act broke the causal chain between Lewis' actions and Noga's arrest and prosecution for burglary.

"[S]ection 1983 requires that the plaintiff prove ... that the defendant caused the deprivation of his or her [constitutional] rights." *See Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 686 (2d Cir.1998). "Proximate cause is defined as a cause 'which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred.'" *Sanchez v. Bellefeuille*, 855 F.Supp. 587, 595 (N.D.N.Y.1994) (quoting *Caraballo v.*

*United States*, 830 F.2d 19, 22 (2d Cir. 1987)). The test for proximate cause is whether the defendant's actions or his failure to act were "substantial factor[s] in the sequence of causation and whether the injury is reasonably foreseeable or anticipated as a natural consequence" of the defendant's actions or his failure to act. *Sanchez*, 855 F.Supp. at 595; *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir.2000). Proximate cause is usually a factual question for the jury because the question of foreseeability is subject to differing views. *Sanchez*, 855 F.Supp. at 595.

The record demonstrates that Lewis' actions and failure to act were substantial motivating factors in Cirincione's filing a complaint for burglary against Noga. Cirincione stated that he filed a complaint with the police only after Lewis told him that the District Attorney and police department said the lease was not legal.App. at 177. Lewis encouraged Cirincione to file the complaint and called the officer to Cirincione's business to facilitate formally filing the complaint. Potenza stated that if he had known about the self-help provision, he would not have filed charges against Noga.App. at 260. There is sufficient evidence for a jury to conclude that Lewis' failure to inform the investigating officers about the self-help provision was a proximate cause of Noga's arrest and prosecution. Accordingly, defendant Lewis' motion on this ground is denied.

### C. Federal Malicious Prosecution Claim

Defendant Lewis moves for summary judgment on the grounds that Noga failed to satisfy any of the elements required for a malicious prosecution case. Noga alleges that all elements are satisfied.

To establish a malicious prosecution claim under § 1983, the plaintiff must prove the following elements: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, ... (4) that the prosecution terminated in plaintiff's favor, ... [and] (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000); *Singer v. Fulton Co. Sheriff*, 63 F.3d 110, 116–17 (2d Cir.1995).

### 1. Initiating the Prosecution

A defendant can initiate a prosecution by actively providing advice and encouragement to the complaining party. *Rohman*, 215 F.3d at 217. A defendant can be held liable for initiating a prosecution when he fails to provide material information to an investigation or a prosecution and that omission influences the decision to arrest and prosecute. *See Chimurenga v. City of New York*, 45 F.Supp.2d 337, 343 (S.D.N.Y.1999). Here, Lewis set into motion the events that led to Noga's arrest. There is evidence to show that Lewis induced a third person, who did not otherwise intend to do so, to make a complaint against Noga. Lewis, while on duty, spoke with investigating officers about Cirincione's problem, told Cirincione that the lease provision was illegal, encouraged Cirincione to file a complaint against Noga and sent an officer to Cirincione's place of business to take the complaint. Lewis knew about the self-help provision and failed to inform Potenza or Caruso in order to prevent the prosecution of Noga. Additionally, Potenza alleges that Lewis failed to inform him of the self-help provision in the lease and that this information would have prevented the investigation, arrest and prosecution of Noga.

Potenza Aff. at ¶¶ 16–17. Whether this conduct constituted the initiation of the prosecution against Noga is a question of fact for the jury and, thus, summary judgment on this ground is denied.

### 2. Probable Cause

"Plaintiffs must show that Defendants had no 'knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Cipolla v. County of Rensselaer*, 129 F.Supp.2d 436, 453 (N.D.N.Y.2001). Here, Lewis knew that there was a self-help provision which allowed Noga to remove property from the rented garage in lieu of late rent. App. at 347. Lewis knew Noga had a right to enter the garage and take collateral, yet he still encouraged Cirincione to file a complaint against Noga. *Id.* at 177, 355. The jury could find that Lewis knew there was no probable cause to arrest or prosecute Noga, and yet did nothing to prevent this result. Thus summary judgment is also denied on this ground.

### 3. Malice

Malice in a malicious prosecution case means "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996). "[M]alice may be inferred from the lack of probable cause." *Id.* Thus, if there is a question of fact for probable cause, there is also a question for malice. *See Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir.1994) (stating that New York courts traditionally consider the issue of malice to be a jury question).

Alternatively, "malice may be shown by proving the prosecution complained of was undertaken from improper or wrongful motives or in reckless disregard of the rights of the plaintiff." *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir.1996) (citations omitted). Here, Lewis' threat to Noga that he better "watch out" is sufficient. Such evidence suffices to satisfy this requirement and, thus, summary judgment on this ground is denied.

### 4. Prosecution Terminated in Noga's Favor

"[W]hen the grounds for the dismissal of a criminal proceeding are unclear, New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment." *Rounseville*, 13 F.3d at 629. Here, the facts surrounding the termination are in dispute, thus precluding summary judgment on this ground. *See id.* Lewis contends that the dismissal was not in Noga's favor because there was no explanation. Noga contends that his case was dismissed when his attorney informed the court about the self-help provision in the lease. Stewart Aff.(Docket No. 29) at ¶ 6. Additionally, Noga's criminal defense attorney, Joseph L. Litz, moved for dismissal of the burglary prosecution on the basis that there was insufficient proof and that the informations were defective as a matter of law and on its face. Noga Motion to Dismiss (Docket No. 31, Ex. A) at ¶ C, D. The prosecutor also consented to the dismissal. Litz Aff. (Docket No. 30) at ¶ 3. This raises the question whether the prosecutor had reasonable grounds to proceed. *See id.; Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir.1997). Because the facts surrounding the dismissal are in dispute, summary judgment on this ground is denied.

### 5. Post–Arraignment Liberty Restraint

Lewis does not contest the fact that Noga suffered a deprivation of liberty in violation of the Fourth Amendment. Lewis Mem. of Law (Docket No. 27) at 17. Nonetheless, the facts clearly demonstrate that Noga suffered post-arraignment liberty restraints. Noga was incarcerated for twenty-four hours after his arrest and then placed on pre-trial supervision. Noga Aff. (Docket No. 31) at ¶ 5. Noga could not leave New York State, thus restricting his fundamental right to interstate travel. Noga appeared in court two to three times while the charges were pending. *Id.* The court also rescinded Noga's pistol permit. *Id.* These facts suffice to implicate a violation of Noga's Fourth Amendment rights. *See Rohman*, 215 F.3d at 216.

### D. Malicious Prosecution Claim Under New York Law

There is a one year statute of limitation for a malicious prosecution claim under New York law. The police filed formal charges against Noga on February 20, 1998 and the case was dismissed on October 17, 1998. The original complaint in this case was filed on June 19, 1999 naming "John Doe" as a defendant. The amended complaint naming Lewis as the "John Doe" was filed on August 21, 2000. Docket Nos. 1, 13.

Relation back for the state malicious prosecution claim is not allowed under either federal or state law. Under Fed. Rule Civ. P. 15(c), relation back is not allowed when "the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir.1995). Here, Noga conceded he did not know the identity of "John Doe" until after the statute of limitations passed. Noga Mem. of Law (Docket No. 32) at 17. Thus, the malicious

prosecution claim under New York law cannot relate back to defendant Lewis under the federal rules.

 Under New York law, relation back is allowed if the plaintiff meets the following three prong test: (1) both claims arose out of the same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant . . . , and (3) the new party knew or should have known that but for a[ ] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well. *Buran v. Coupal,* 87 N.Y.2d 173, 178, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995); *see also,* N.Y. C.P.L.R. § 203 (McKinney Supp.2001). To satisfy the second prong, "the interest of the parties in the subject-matter is such that they stand or fall together and that the judgment against one will similarly affect the other." *Walker v. Agro,* No. 96 Civ. 5414, 2000 WL 744536, at *4 (E.D.N.Y. May 19, 2000). Noga presents no argument regarding Lewis' interests being united with the other defendants other than the fact that both Lewis and Potenza are Schenectady police officers. Having the same employer is inadequate to establish that Lewis' interests were united with the other defendants' interests. There is no evidence to suggest that Lewis' interests will stand or fall with the other defendants, but there is evidence to show that Lewis' interests are inapposite to the other defendants' interests. Furthermore, there is no evidence presented that Lewis should have known that but for a mistake by Noga as to his identity, this action would have been brought against him. Therefore, summary judgment must be granted as to the mali-

cious prosecution claim under New York law.

### III. Conclusion [3]

 **WHEREFORE**, for the reasons set forth above, it is hereby

**ORDERED** that Defendant Lewis' motion for summary judgment is **DENIED** as to the state and federal unlawful arrest claims and the federal malicious prosecution claim and **GRANTED** as to the state malicious prosecution claim, and

**IT IS FURTHER ORDERED** that the Clerk of the Court serve a copy of this order, by regular mail, upon all parties to this action.

**IT IS SO ORDERED.**

---

**3.** Defendant Lewis also argues for summary judgment on the ground of qualified immunity. Qualified immunity is allowed for a police officer when it was " 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v.*

*Miller,* 66 F.3d 416, 420 (2d Cir.1995). Viewing the evidence in the light most favorable to Noga, a jury could find that Lewis' actions and failure to act were objectively unreasonable and, thus, Lewis is not entitled to summary judgment. *See id.* at 420–21.