104 F.3d 352
 78 A.F.T.R.2d 96-7032, 96-2 USTC P 50,640
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Teresa Marie PANTANI and Edmund L. Pantani, Plaintiffs-Appellants,
v.
Shirley D. PETERSON, Commissioner of IRS and United States
of America, Defendants-Appellees.
 No. 96-6018.
 United States Court of Appeals, Second Circuit.
 Oct. 31, 1996.
 
 Appearing for Appellants: Max F. Brunswick, New Haven, Connecticut.
 Appearing for Appellees: Gary R. Allen, Tax Division, United States Department of Justice, Washington, D.C.
 Before OAKES, VAN GRAAFEILAND and WINTER, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 Teresa Marie Pantani and Edmund L. Pantani appeal from Judge Dorsey's grant of Rule 11 sanctions and a grant of summary judgment to appellees (the "government").
 
 
 4
 It is not wholly clear whether the Pantanis challenge on appeal the imposition of Rule 11 sanctions. If they do, we do not hesitate to find no abuse of discretion in the district court's award. See Virginia Atlantic Airways v. National Mediation Bd., 956 F.2d 1245, 1254 (2d Cir.), cert. denied, 506 U.S. 820 (1992) (applying abuse of discretion standard to appellate review of Rule 11 sanctions) (citing Cooter & Gell v. Harmarx Corp., 496 U.S. 384 (1990)). The Pantanis' attorney admitted receiving a copy of the government's Rule 11 motion, but claims that he believed that Mr. Pantani, also an attorney, would respond. The district court was correct in concluding that this assumption did not relieve him of his obligation to respond and that plaintiffs were properly served. See Fed.R.Civ.P. 5; Pantani v. Peterson, 902 F.Supp. 24 (D.Conn.1995).
 
 
 5
 On their appeal from the grant of summary judgment, the Pantanis argue that their remittance of $86,000 in 1987, sent along with their Form 4868 request for extension of time to file a return for 1986, was a deposit rather than a payment of tax. As a deposit, the remittance would not be subject to the statute of limitations of 26 U.S.C. § 6511(b)(2)(A). Their argument is meritless.
 
 
 6
 First, the Internal Revenue Code requires that the Pantanis' remittance be treated as a payment of estimated tax. Section 6513(b)(2) provides that "[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return)." 26 U.S.C. § 6513(b)(2). Other circuits have been faced with the issue of how to decide whether remittances sent in with a Form 4868 extension request are deposits or payments and have held that they are payments as a matter of law. See Gabelman v. Comm'r of Internal Revenue, 86 F.3d 609, 611-13 (6th Cir.1996); Weigand v. United States, 760 F.2d 1072, 1073-74 (10th Cir.1985); see also Zeier v. United States Internal Revenue Serv., 80 F.3d 1360, 1363-64 (9th Cir.1996); Blatt v. United States, 34 F.3d 252, 254 (4th Cir.1994). But see Risman v. Comm'r of Internal Revenue, 100 T.C. 191, 198 (1993).
 
 
 7
 Second, by Mr. Pantani's own admission during a deposition, the remittance constituted a payment. During the deposition the following exchange occurred:
 
 
 8
 Q. In [Government Exhibit 1] or in the affidavit you talk about you mailing in a check for $86,000 to the Internal Revenue Service.
 
 
 9
 When you mailed in this check did you anticipate that you would have an income tax liability for 1986?
 
 
 10
 A. Yes.
 
 
 11
 Q. And your intent on mailing this check was to pay the income tax liability?
 
 
 12
 A. To send in a payment to avoid any penalties and put something forward to preserve all the rights and obligations that go with paying your taxes and filing your returns.
 
 
 13
 It was probably more money than was going to be due, but I was advised to send in more because it was hard to figure out the exact amount that year.
 
 
 14
 Q. Did you intend for this money to be applied toward your 1986 income tax liability?
 
 
 15
 A. Some of it.
 
 
 16
 Q. And you did believe you had an income tax liability for 1986?
 
 
 17
 A. I was advised that I would have a liability for that year, yes.
 
 
 18
 Q. Did you personally believe you had one?
 
 
 19
 A. Yes, I thought it was going to be closer to around $40,000. The accountant said it could be as high as $86,000 and to send in that amount as a good-faith payment. I had to take out a loan to do it. I found the loan papers too this morning.
 
 
 20
 What Mr. Pantani describes is a payment of estimated tax, not a deposit. Cf. Zeir, 80 F.3d at 1364. As a payment of estimated tax, it is subject to the limitations period of 26 U.S.C. § 6511(b)(2)(A).
 
 
 21
 We therefore affirm.